**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 23-CR-00064-KD** |
| | ) | |
| **FRANKLIN JAVIER PEREZ-RIOS** | ) | |
| | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through Sean P. Costello, the United States Attorney for the Southern District of Alabama, and respectfully files this sentencing memorandum in support of its sentencing recommendation.

## I.     Introduction

Between 2017 and 2023, defendant Franklin Javier Perez-Rios carried out an elaborate fraud scheme in which he misrepresented himself as a professional qualified to provide legitimate, immigration-related legal services to Spanish-speaking foreign nationals.  Perez-Rios promised that he could represent foreign nationals seeking immigration help by filing official U.S. government forms and paperwork on their behalf to obtain legal immigration status in the United States.  Despite knowing that he had no legitimate qualifications to perform this type of work, Perez-Rios misled hundreds of victims across the United States into hiring and paying him substantial fees for what they believed were legitimate immigration services.

1

On March 30, 2023, a federal grand jury for the Southern District of Alabama returned an indictment against defendant Franklin Javier Perez-Rios ("Perez-Rios"), charging him with fifteen counts of wire fraud related to his immigration fraud scheme. On August 24, 2023, Perez-Rios pleaded guilty pursuant to a written plea agreement[1] to counts 1, 2, 4, 5, 6, 7, 8, 11 and 15. [Docs. 28, 28-1].   On September 11, 2023, this Court adjudged Perez-Rios guilty.  [Doc. 31].  The sentencing hearing is scheduled for March 8, 2024.

## II. Perez-Rios defrauded hundreds of foreign nationals in a nationwide immigration fraud scheme.

Perez-Rios, a foreign national of Honduras, resides in the United States with asylee status.  At all times relevant to this case and scheme, Perez-Rios lived primarily in Pensacola, Florida.  His primary source of income from 2017 through 2023 was profits gained from his immigration fraud scheme.  Unfortunately, despite substantial efforts to locate proceeds of his scheme, Perez-Rios has dissipated all profits from the scheme and has no assets to show for it.

### A. Explanation of Legitimate Affirmative Asylum Claims

---

[1] Perez-Rios has proffered with federal agents on three occasions and attempted to cooperate.  Perez-Rios's plea agreement contains a provision for the potential of a downward departure in accordance with U.S.S.G. § 5K1.1 or Rule 35 of the Federal Rules of Criminal Procedure.  At this time, the United States has no basis to file a substantial assistance motion, however, the United States will file the appropriate motion if the circumstances change in the future.

Under certain circumstances, foreign nationals present in the United States may seek asylum to remain in this country by filing an affirmative asylum claim. To do so, the foreign national must establish certain criteria, including that they and are unwilling to return to their home country because of persecution, or a well-founded fear of persecution, based on their race, religion, nationality, membership in a particular group, or their political opinion.

An asylum claim is initiated when a Form I-589, entitled "Application for Asylum and Withholding Removal" ("asylum claim"), is filed with United States Citizenship and Immigration Services ("USCIS"). USCIS is the government agency of the United States Department of Homeland Security ("DHS") responsible for adjudicating asylum claims. An asylum claim must be filed within one year of the claimant's last arrival in the United States unless they qualify for an exception. Before an asylum claim is submitted to USCIS, it is signed by the foreign national beneficiary under penalty of perjury. Anyone assisting the foreign national with this claim must also certify that the information contained within is true and correct to the best of their knowledge. There is no fee to apply for asylum.

Once USCIS receives an asylum claim, USCIS mails a Form I-797C Notice of Action ("Form I-797C") to the foreign national seeking asylum. A Form I-797C does not convey any asylum benefits. It only provides notice that USCIS has received the applicant's claim. However, the Florida Division of Motor Services generally considers

a Form I-797C as an acceptable document for the purpose of issuing a temporary Florida driver's license.

After receiving an asylum claim, USCIS sends the applicant a notice scheduling a biometrics appointment at the nearest USCIS facility. For example, applications using a Pensacola address would be scheduled to appear at USCIS New Orleans at a certain date and time. The purpose of this appointment is to collect fingerprints and other biometric data from the asylum applicant. This required appointment is provided free of charge for asylum applicants. Next, the asylum claimant receives an interview notice, and an interview is conducted. After the interview, an asylum officer makes a determination as to the asylum claimant's eligibility, and a supervisory asylum officer reviews the decision. After the supervisory asylum officer's review, the asylum claimant receives a decision as to whether their claim has been granted or their claim is referred to an immigration court.

**B.** **Perez-Rios fraudulently exploited the asylum process to carry out his scheme.**

Perez-Rios took advantage of the affirmative asylum process outlined above, especially the loophole where a driver's license could be issued to an asylum applicant in Florida. Between 2017 and 2023, Perez-Rios filed approximately 214 asylum applications on behalf of victims who hired him. However, Perez-Rios used his personal Pensacola addresses on the applications to ensure all correspondence with

USCIS was maintained within his sole control. To induce these foreign nationals to hire him for immigration services, he portrayed himself as one or more of the following: a current government official; a former government official; an attorney; a paralegal; a legal assistant; an attorney-in-training; an immigration consultant; someone employed by USCIS; or an otherwise immigration-services professional. None of these are true. While Perez-Rios did not operate his immigration business out of a storefront or advertise his services, he held himself out to be associated with USCIS on Facebook:



Perez-Rios's clients were primarily foreign nationals from Spanish-speaking countries who were illegally present in the United States. These foreign nationals hired

Perez-Rios upon his promise that he would help them legally obtain some form of legal status in the United States within a certain time. Perez-Rios's clients reside across the United States in Alabama, Florida, Mississippi, Texas, Maryland, California, New York, Louisiana, Michigan, North Carolina, Indiana, Nevada, Georgia, Massachusetts, Tennessee, and Missouri.

Once retained, Perez-Rios began collecting clients' personal identifying information and filed asylum claims with USCIS on their behalf. In some instances, clients did not want to seek asylum and were unaware that an asylum claim would be filed on their behalf. In other instances, clients were aware that an asylum claim was to be filed but were not informed of the full scope and consequences of filing such a claim. In other instances, clients retained Perez-Rios to file applications or petitions with USCIS, however, Perez-Rios never filed anything on their behalf despite being paid.

The asylum applications prepared by Perez-Rios contained materially false statements about his clients unbeknownst to them. At times, these asylum claims also contained forged signatures. The content of the applications consisted of several indicators of fraud, including inaccurate dates of entry and recycled templates not unique to the individual applicant. Many victims had not even seen the contents of the application that had been filed on their behalf and simply signed blank applications at the direction of Perez-Rios.

After filing an asylum claim, Perez-Rios would receive a Form I-797C from USCIS confirming receipt of the claim. Perez-Rios would use this USCIS correspondence to inform clients that their immigration process was progressing, often through video messages. Below, Perez-Rios is captured explaining that he had received important correspondence from USCIS and displayed several letters from USCIS.






Perez-Rios used Form I-797C like the one pictured above to secure temporary Florida drivers licenses for his clients. Although neither the receipt of a Form I-797C or a Florida driver's license meant that the client would necessarily receive legal status in the United States, this was a primary way that Perez-Rios defrauded clients into believing that these events indicated he was successfully handling their claims.

In the video message that is screenshot below, Perez-Rios gives a general update about clients' cases amongst what he indicates are stacks of critical correspondence from USCIS.



Perez-Rios routinely messaged clients asking for payment, providing "updates" on their immigration cases, and giving directions of what they must do as part of the immigration process. For example, in one message thread with O.B.S., Perez-Rios gave a false sense of hope and success regarding O.B.S.'s application. Perez-Rios' messages are in blue and O.B.S.'s messages are in green below:



To: ███████ Pensacola Franklin
Hello, good morning, is there any news about my request for acyl?

| Participant | Delivered | Read | Played |
|---|---|---|---|
| 8503166620 Pensacola Franklin | | | |

Status: Sent
10/26/2018 9:30:50 AM(UTC-5)

From: ███████ Pensacola Franklin
I'll call you in a while

Status: Read
10/26/2018 2:12:14 PM(UTC-5)

To: ███████ Pensacola Franklin
Is there any news about my case?

| Participant | Delivered | Read | Played |
|---|---|---|---|
| 8503166620 Pensacola Franklin | | | |

Status: Sent
10/26/2018 2:12:48 PM(UTC-5)

From: ███████ Pensacola Franklin
Yes, and thank God, they accepted our case very well.

Status: Read
10/26/2018 2:18:08 PM(UTC-5)

From: ███████ Pensacola Franklin
blessed god

Status: Read
10/26/2018 2:18:12 PM(UTC-5)

To: ███████ Pensacola Franklin
You don't know the peace and happiness I feel right now, thank you very much for helping me

| Participant | Delivered | Read | Played |
|---|---|---|---|
| 8503166620 Pensacola Franklin | | | |

Status: Sent
10/26/2018 2:24:06 PM(UTC-5)



From: [REDACTED] Pensacola Franklin
You're welcome. It's my job.

**Status:** Read
10/26/2018 2:38:12 PM(UTC-5)

From: [REDACTED] Pensacola Franklin
I still feel very happy when we win a battle

**Status:** Read
10/26/2018 2:44:10 PM(UTC-5)

From: [REDACTED] Pensacola Franklin
And we add one more case that is a great achievement

**Status:** Read
10/26/2018 2:44:30 PM(UTC-5)

To: [REDACTED] Pensacola Franklin
And when is the next step?

| Participant | Delivered | Read | Played |
| --- | --- | --- | --- |
| 8503166620 Pensacola Franklin | | | |

**Status:** Sent
10/26/2018 2:45:09 PM(UTC-5)

From: [REDACTED] Pensacola Franklin
In the afternoon I tell him

**Status:** Read
10/26/2018 2:45:43 PM(UTC-5)

To: [REDACTED] Pensacola Franklin
I will be honest at all times to make the process easier.

| Participant | Delivered | Read | Played |
| --- | --- | --- | --- |
| 8503166620 Pensacola Franklin | | | |

**Status:** Sent
10/26/2018 2:46:03 PM(UTC-5)

From: [REDACTED] Pensacola Franklin
It's better this way

**Status:** Read
10/26/2018 2:59:24 PM(UTC-5)

Perez-Rios continued to mislead O.B.S. and ultimately provided him a fraudulent document, which appeared to give some immigration benefit that O.B.S. had desperately hoped he would receive:



Throughout the process, Perez-Rios charged thousands in "fees" to his clients. Perez-Rios told his clients these "fees" were required by the government. Fees included payments for a "forgiveness fee" or "pardon fee" for entering the United States illegally. There is no such thing as a "forgiveness fee" or "pardon fee" charged to asylum applicants. Perez-Rios collected "fees" purportedly due to USCIS for filing an asylum claim, which does not require a filing fee.



In the above picture, a preliminary list of fees was provided to clients.  In this example, fees were requested for the following:

Fianza = Bail

Carta Pardon= Pardon Letter

Proceso = Process

Formularios = Forms

USCIS = United States Customs and Immigration Services

Envio = Shipment.



In the text message screen shot above, Franklin Rios ABOGADO writes to a client,

> Hello. Good evening. Please remember be here in Pensacola at 2:00 p.m. tomorrow so we may leave early and not be rushed. I'm sending the information about the money orders that you need to bring with you: 1480, 475, 375, 210, 76 and for those that aren't going: 1480, 475, 375, 210, 76 and an additional 125 for the power of attorney and 150 for the forms.

Perez-Rios collected payments from his clients supposedly be paid to USCIS for the clients' biometrics information collection in New Orleans. This appointment is provided to asylum applicants free of charge. Typically, Perez-Rios would provide the

legitimate notice of biometrics appointment correspondence setting a date and time for an appointment in New Orleans.

Perez-Rios would routinely show victims filled out checks he had supposedly written out on behalf of clients to Homeland Security or USCIS, which gave the impression to victims that their payments were going directly to some government agency as part of their immigration process.



The G-28 reference in the memo line above is shorthand for a USCIS form called "Notice of Entry Appearance as Attorney or Accredited Representative." The Form I-130 reference in the memo line above in the other check is shorthand for a USCIS form

called "Petition for Alien Relative" and is used by U.S. citizens or lawful permanent residence needing to establish relationship to an eligible relative. Neither form would be appropriate for Perez-Rios's clients. Regardless, these checks were never actually issued to any government agency. Moreover, Perez-Rios's accounts for which these checks were drawn had long been closed.

Perez-Rios's scheme was convincing to a vulnerable Spanish-speaking population unfamiliar with immigration procedures because it had the appearance of progress and results. For example, clients were routinely scheduled for a real biometric appointment at USCIS New Orleans, and many obtained a Florida driver's license. Again, Perez-Rios used these occasions to charge fictitious fees under the guise that the fees were owed to USCIS.

During the sham immigration process, Perez-Rios told his clients, regardless of residence, that they were required to travel with him to a USCIS office near the United States/Mexican border in San Ysidro, California as part of this process required by immigration authorities. Perez-Rios collected "fees" for his services related to trips to California under the auspices that the trip was a necessary part of the asylum process or otherwise obtaining legal status. Clients paid for their flights and lodging and then were brought to the San Ysidro Port of Entry. Perez-Rios would book hotels and rentals for groups of his clients, which typically included a dozen or more at a time. During the multi-day trip, Perez-Rios collected "fees" for medical examinations and

vaccinations.  There is no medical examination or vaccination requirement to obtain asylee status.



The California trips were just a façade and one of many opportunities used to charge clients for fees for what they believed were legitimate services.  In addition, there is no vaccination or medical examination required as part of the asylum claim process. Perez-Rios used all these occasions as opportunities charge clients fees.  Numerous victims took these trips, unnecessarily underwent medical examinations, and received vaccines that they thought were required.

Meanwhile, Perez-Rios portrayed himself online as diligently working on his clients' behalf:



In the social media posts below, Perez-Rios (identified as Franklin Abogado meaning Franklin Attorney by a victim) posted the following story of several batches of USCIS applications, envelopes, and even a large printer. In the post to the left below, Perez-Rios writes "Exhausting day of work and then an equally long night of work." In the post to the right below, Perez-Rios writes, "Here we go to work again at dawn, ready for a new challenge. Good morning cruel world hahahaha."





Perez-Rios commonly created and distributed forged letters and documents that appeared to bear official government seals, including the seals for USCIS and United States Immigration and Customs Enforcement ("ICE"). Because Perez-Rios shared a mixture of real USICS correspondence and fake correspondence, he was able to successfully deceive his clients. The fake letters and documents gave victims the impression that they had achieved some sort of status or approval from USCIS. These documents contained fake case numbers, fake government agencies, fake titles, fake approvals all on USCIS or ICE letterhead. The documents were typically in English

and riddled with punctuation errors. Templates of these fake documents were ultimately found on Perez-Rios's electronic devices and email accounts. A few examples of these fake documents are displayed below where I.B.C. was misled to believe that he had received "VERIFICATION OF LEGALITY":



In some fake documents, Perez-Rios referenced his ficticious "boss" and "supervisor" and even refer to himself as "Officer."



U.S. Citizenship
and Immigration
Services

**DEPARTMENT OF HOMELAND SECURITY**
**AND USCIS**
**OFFICIAL SUPERVISOR FIRST ANDRESS CORRALES**

**FRANKLIN J PEREZ RÍOS**
JI ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
A – XXX-000-786
QXZ-575E56746278424567812
720 E SAN YSIDRO BLVD
SAN YSIDRO , CA 92173
09/26/2020

THE UNITED STATES SECURITY **DEPARTMENTZ OF HOMELAND SECURITY** IN JOINT WITH
THE **USCIS** IMMIGRATION DEPARTMENT DID THE FOLLOWING CONCLUSION ON THE CASE
OF ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ WHICH WAS NOT FOUND WITH CRIMINAL
RECORATION AND CONCLUDED BY THOSE **UNITED NORTH AMERICA** WHICH LEADS IT TO
THE BEGINNING OF ITS LEGAL DOCUMENTATION FROM OUR COUNTRY GIVING IT THE
OPPORTUNITY TO LEGAL MIND THROUGH THE POLITICAL ASYLUM PROCESS WHICH WILL
TAKE IT TO THE TEMPORARY RESIDENCE IN THREE YEAR OLD TERM  REGARDING YOUR
CASE CONTACT YOUR LEGAL OR DIRECTLY AT YOUR LOCAL OFFICE





U.S. Citizenship
and Immigration
Services

**DEPARTMENT OF HOMELAND SECURITY**

**AND USCIS**

███████████████

**OFFICER FRANKLIN PEREZ RIOS**

**TRAVEL ACCESS**

**MANAGUA NICARAGUA**

**TTDOQZAP0071645**

**720 E SAN YSIDRO BLVD**

**SAN YSIDRO , CA 92173**

**12 /04 /2020**

THE HOMELAND SECURITY DEPARTMENT ISSUING THE NINTY-DAY TRAVEL
AUTHORIZATION USABLE IN THE FOLLOWING EMERGENCY MEASURES MIGRATORY
PROCESSES AMARICAN EMBASSY AND OLD APPOINTMENTS FOR TOURISM AND
PERSONAL BUSINESSES GIVING AN NO-SAFE DEPARTURE AUTHORIZATION ON THE
NEXT SECURITY UTILIZATION ON THE SECURITY NOTICE OF DEPARTURE NOTICE.  AT
YOUR BEST CONVICTION AND FOR THE TIME THAT IS NECESSARY WITH A RETURN TO
100% GUARANTEE A CERTAIN PERMIT BEGINS ITS ISSUE ON DECEMBER 04, 2020
WITHOUT AN EXPIRY DATE AFTER RECEIPT OF YOUR TEMPORARY RESIDENCE YOU
WILL BE NOTIFIED OF THE NEXT THREE MONTHS  YEAR 2021 YOUR DEPARTURE AND
RETURN DATES

OFFICER ANDRESS CORRALES


## U.S. Citizenship
## and Immigration
## Services



DEPARTMENT OF HOMELAND SECURITY
AND USCIS
OFFICIAL SUPERVISOR FIRST ANDRESS CORRALES
OFFICIAL FRANKLIN J PEREZ RIOS
S█
A -XXX-XXX-4432
QRZ-000234567654322345
720 E SAN YSIDRO BLVD
SAN YSIDRO , CA 92173
03-29-2021

THE **U.S. DEPARTMENT  CITIZENSHIP AND IMMIGRATION SERVICES USCIS** TOGETHER
WITH **THE DEPARTMENT OF HOMELAND SECURITY** OF **THE UNITED STATES OF NORTH
AMERICA**, GRANTES TWO THOUSAND AND TWENTY-ONE ON THE THIRD OF MARCH
OF THE YEAR UNDER THE PROCESS OF **FORM I 589 ASILO**  THE PROCESS OF
ADJUSTMENT TO SEARCH OF **SU**█████████████ WHICH  IS REGISTERED
AS A PERMANET RESIDENT OF THE **UNITED STATES OF NORTH AMERICA** BASED ON
CONSTITUTION NUMBER 45 TH OF PERMANENT REFUJIATE WHICH WILL BE
PROCESSED AND WILL FORWARD THE PREVIOUS DOCUMENTATION TO ITS PROCESS
AND THE FOLLOWING AUTHORIZATION AND THE FOLLOWING AUTHORITY
AUTHORIZATION ADMISSION.  TO SUBMIT BY LAW THE FOLLOWING
DOCUMENTATION STATE IDENTIFICATION AND SOCIAL SECURITY NUMBER



During the scheme, Perez-Rios threatened clients that if they became difficult or did not pay, he would cancel a client's asylum application and contact immigration authorities for the purpose of deporting them.

Perez-Rios attributed delays at USCIS to justify and conceal a lack of action and progress of their immigration cases. When clients demanded their money back, Perez-Rios provided a litany of excuses, including that he was in poor health and had left Florida to receive treatment for cancer and diabetes. For example, in a video message screenshotted below, Perez-Rios claimed to have been admitted into a hospital and diagnosed with lupus. In the video, Perez-Rios says that he spoke to his "boss" about their immigration processes. Perez-Rios apologizes and asks for understanding and patience.



When pressed by clients, Perez-Rios referred them to his fictitious USCIS "boss" named Officer Carlos Daniel Corrales to advise them about their pending cases. Perez-Rios explained that his "boss" could only communicate through his email address of "officialcorralesgov@hotmail.com." When clients communicated with the email account, "Officer Corrales" explained that Perez-Rios was being treated for cancer and that his chances of recovering were minimal. "Officer Corrales" also praised Perez-Rios for making application processes work "seamlessly." Perez-Rios also included references to "Official Supervisor First Andress Corrales" on some of the fraudulent documents on USCIS letterhead that he provided to his clients.



On April 26, 2022, HSI agents executed two federal search warrants at residences rented by Perez-Rios in Pensacola. At his primary residence, HSI agents found files for hundreds of victims of the fraud scheme. HSI agents also found money orders, counterfeit USICS documents, passports, passport copies, and official USCIS documentation displaying hundreds of victims' names and personal identifying information. Agents found approximately 52 asylum applications completed on behalf of victims, which had not been filed with USCIS.

On the same day of the searches, Perez-Rios was given *Miranda* warnings and agreed to be interviewed by HSI Agents and task force officers. Perez-Rios claimed that his immigration business is not actually a business and characterized his role as supporting people who need immigration help. However, for some victims, Perez-Rios held himself out as a business owner of "Latinos Unidos" in an effort to appear legitimate. A flyer of this sham business is set out below:



LATINOS UNIDOS

CAMINO A LA LEGALIZACIÓN
PARA UN VIDA MEJOR

 N Green st
Pensacola FL 32505
Cell phone =
Email -
Horas de Oficina = 9:30 a.m a 4:30 P.m

**LATINOS UNIDOS EN PENSACOLA**

ORGANIZACIÓN DE AYUDA A NUESTRA GENTE HISPANA QUE ESTÁN EN PROCESAMIENTOS DE INMIGRACIÓN , PROCESOS DE CORTES , LLENADO DE APLICACIONES , ASILO , PERMISOS , DE TRABAJO TRADUCCIONES , SERVICIO DE NOTARIALES , Y ASESORÍA SOBRE TRÁMITES Y PROCESOS MIGRATORIOS

On many asylum applications, Perez-Rios used the name "Latinos Unidos" as an organization representing the applicant. In some of the fraudulent documents, Perez-Rios included the organization. In the form above, the business is described as an

"Organization to help our Hispanic people who are [dealing with] immigration processing, court processes, filling out applications, asylum, work permits, translations, notary services, and advice on immigration procedures and processes."



Perez-Rios admitted that he never worked for the U.S. Government and that he is not an attorney or paralegal. Perez-Rios claimed he had been providing his immigration services for about three years and that he makes approximately $14,000

per year assisting people with immigration and did not believe that this amount met the threshold to report this amount on his taxes.

Ultimately, Perez-Rios did not provide the immigration services promised to victims for which he profited over $2.8 million. His clients did not have their asylum claims granted, and, in many cases, these applications caused them collateral harm. Perez-Rios did not inform clients of scheduled asylum interviews or falsely advised clients that interviews were not required. Now, the victims will need to start from scratch in their journey to achieve legitimate immigration statuses through the proper legal channels. While the victims actual losses are substantial and restitution is owed to them, the collateral consequences are difficult to quantify. Had the victims known that Perez-Rios was not who he claimed to be, they would not have retained him in the first instance.

## III.     Presentence investigation report ("PSR")

The United States has no objections to the PSR's Guidelines calculations. [Doc. 43]. Based on a total offense level of 28 and a criminal history category of II, the anticipated guideline imprisonment range is 87-108 months. [Doc. 43].

## IV.     Argument in Support of High-End Guidelines Sentence

### A.     Recommended sentence

Perez-Rios faces a maximum sentence of 20 years in prison per count of conviction. 18 U.S.C. § 1343. The United States recommends a sentence at the high-

end of the guidelines for each count to run concurrently, a three-year term of supervised release, a $100 special assessment per count of conviction, money judgment forfeiture in the amount of $2,805,136.92, forfeiture of $500 cash, and restitution in the amount of at least $2,251,078.10 as further explained below, and no fine. Such a sentence would be appropriate and reasonable considering the applicable guideline sentencing range and the § 3553(a) factors, including the offense conduct, the need for deterrence, and the need to provide for just punishment.

## B. The Factors set out in § 3553 Support the Recommended Sentence

Although this Court may not presume that a guideline-range sentence is reasonable, the guidelines remain a significant component of the sentencing process. *United States v. Delva*, 922 F.3d 1228, 1257 (11th Cir. 2019); *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) ("[W]hile we do not presume that a sentence falling within the guidelines range is reasonable, we ordinarily expect it to be so."). This Court must first calculate the guideline range and kind of sentence before turning to the sentencing factors set out in § 3553(a) and considering whether to vary from the advisory sentence." *United States v. Henry*, 1 F.4th 1315, 1323 (11th Cir. 2021)

Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Other factors outlined in section 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to

provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

The nature and circumstances of the crime call for a high-end guidelines sentence. Perez-Rios knowingly preyed on the pursuit of the American dream held by hundreds of vulnerable foreign nationals. The victims in this case were mostly without proper documentation to be present in the United States, less educated as a whole and unfamiliar with United States immigration law and the English language. Moreover, the victims shared a generalized fear of being discovered by immigration officials and being deported. Due to those fears, the victims were less inclined to report Perez-Rios's illegal conduct to the proper authorities. As a result, the victims were especially susceptible to Perez-Rios's scheme.

The victims in this case were in desperate need of legal advice and help. Through countless misrepresentations, Perez-Rios profited off their hope, desperation, and fears. Victims were sold on their hope to change their legal statuses. Victims placed their complete trust in Perez-Rios to help them achieve legal status that would unite them with family members and secure a better future. Even when Perez-Rios gave a litany of excuses as to why he had not delivered on his promises, victims paid Perez-Rios out of desperation because they had invested and believed in him. Even when victims

began to doubt Perez-Rios's process, they paid him based on fear of deportation. Victims kept paying Perez-Rios because they believed he truly had the power to set in motion possible deportation and separation from family members in the United States.

C.    **The need for the sentence to reflect the seriousness of the offense, promote respect for the law, and serve as an adequate deterrent**

This type of fraud is a serious offense with wide-ranging consequences. Perez-Rios took advantage of our immigration system, which operates with limited resources, for his personal gain. Perez-Rios masqueraded as a legitimate source for immigration legal help. Individuals perpetrating this type of fraud cause a chilling effect on individuals pursuing legitimate, legal immigration.

While the type of fraud committed by Perez-Rios was extensive, it is not a novel scam. The scam is generally referred to as "Notario Fraud." Notarios are individuals who represent themselves as qualified to offer legal advice or services concerning immigration or other matters of law, who have no such qualification.[2] Typically, "Notario Fraud" involves scammers representing themselves as a "notario publico," which literally translates from Spanish to English as "notary public."[3] A notary public in many Spanish-speaking countries have received the equivalent of a law license and authorized to represent others. *Id.* Other forms of notario fraud include individuals

---

[2] https://www.americanbar.org/groups/public_interest/immigration/projects_initiatives/fightnotariofraud/

[3] https://www.americanbar.org/groups/public_interest/immigration/projects_initiatives/fightnotariofraud/about_notario_fraud/

pretending to be attorneys (or abogado in Spanish), authorized to represent individuals before USCIS, or a legal assistant. *Id.*

The Executive Office of Immigration Review found that notario fraud is a serious and widespread problem that weakens the entire immigration system.[4] Indeed, the Federal Trade Commission issued a consumer alert in 2019, warning of the dangers of these types of scams.[5] The FTC encouraged individuals needing immigration help to find a licensed immigration attorney. *Id.* The FTC's alert explained that notarios routinely take people's money and documents, make big promises, do nothing, and disappear with the cash. *Id.*

The sentence at the high-end of the guideline range serves as a just punishment and will certainly promote respect for the criminal law and encourage legitimate, legal paths to various immigration benefits. Perez-Rios made a mockery of the United States immigration system and the asylum process. Asylum is meant to help vulnerable people who have been persecuted or fear they will be persecuted on account of race, religion, nationality, and/or membership in a particular social group or political opinion. While the purpose of asylum is intended to promote humanitarian purposes, Perez-Rios used it to personally enrich himself at the expense of his victims.

Throughout the scheme, Perez-Rios turned the victims' respect for the law

---

[4]https://www.justice.gov/d9/pages/attachments/2016/03/30/eoirsprogramstofightfraudabuseandineffectiverepresentationfactsheet032016.pdf
[5] https://consumer.ftc.gov/consumer-alerts/2019/09/notarios-are-no-help-immigration

against them.  Perez-Rios warned victims that they would face consequences from law enforcement and immigration authorities if they did not pay him and follow his directions.  Perez-Rios manipulated a vulnerable population fearful of the law to make money.

The recommended sentence will also serve as an adequate deterrent to others who prey on a vulnerable population.  There are numerous foreign nationals seeking legal immigration help.  Many individuals within this population are desperate for help, which makes them a population ripe for manipulation.  When a fraudster portrays sophistication and expertise in the complicated area of immigration law and promises certain results for their immigration cases, individuals are eager to place their trust and hope in the fraudster.

A sentence at the high-end of the guidelines will protect the public from further crimes of Perez-Rios. In 2019, four victims—I.S.G, R.R., J.A.M.B., and C.G.S.—filed complaints against Perez-Rios with the Robertsdale, Alabama Police Department, claiming that Perez-Rios had posed as an attorney to help them with their immigration status and had taken their money, as well as passports.  In January 2019, the grand jury of Baldwin County indicted Perez-Rios for one count of theft by deception 1st degree, two counts of theft of by deception third degree.  Ultimately, Perez-Rios was convicted in Baldwin County for three counts of misdemeanor offenses for theft of property in the 4th degree on January 21, 2020.  Perez-Rios was sentenced to one year in the Baldwin

County Jail, with the sentence suspended, and placed on two years of unsupervised probation. All three cases were ordered to run concurrently, and Perez-Rios was ordered to pay restitution in the amounts of $1300, $2800, and $1,113. A fourth state indictment charging theft of money and/or a passport exceeding $2,500 was dismissed upon the payment of restitution on July 14, 2021. Despite being convicted of these petty offenses, paying a small amount of restitution, and being placed on two years of unsupervised probation, Perez-Rios continued and expanded his fraudulent immigration practice. Perez-Rios continued to enlist scores of victims with promises of guaranteed immigration results.

Even after federal agents executed search warrants on April 26, 2022 at his residence and apartment, Perez-Rios remained undeterred. Perez-Rios was specifically questioned regarding the immigration services he had provided, but he minimized his involvement and chalked it up as simply "helping" people with their immigration cases. Unphased, Perez-Rios continued his scheme and trips to California with multiple groups of victims. While Perez-Rios has obviously accepted full responsibility for his criminal conduct, the United States believes there is a risk that Perez-Rios may not cease his fraudulent behavior at the conclusion of his sentence. For example, despite some victims beginning to question the legitimacy of Perez-Rios's services following the search warrants, he doubled down by circulating a fraudulent letter purporting to be from a law enforcement agency and/or a court.



## U.S. DEPARTMENT OF JUSTICE

DEPARTMENT OF JUSTICE

CASE - CPO-6575-0164

OF THE STATE OF FLORIDA

DATE - SEPTEMBER 01-2022

190 W GOVERNMENT ST PENSACOLA , FL 32502

ORDER FOR

FRANKLIN JAVIER PEREZ RIOS

808 N GREEN ST PENSACOLA FLORIDA 32505

MR. FRANKLIN RIOS THE FLORIDA STATE DEPARTMENT OF JUSTICE ISSUES THE FOLLOWING NOTICE REGARDING
ITS RECENT PROCESS WITH THE STATE DEPARTMENT OF JUSTICE LO WHICH REACHED ITS FULL DETERMINATION
THAT THE LAWSUIT PROCESSES AND ACCUSATIONS IN HIS ARE COMPLETELY OUT OF PLACE SINCE HE HAS
STRICTLY COMPLIED WITH EVERYONE THE REQUIREMENTS AND LEGAL POINTS BASED ON YOUR WORK WHICH IS
IMMEDIATELY APPROVED BY THE ORDER WITH THE PENAL CODE- 235-001 IS YOUR EMPLOYMENT RETURNED TO YOU
ALL BELONGINGS POSSESSED BY THE DEPARTMENTS OF THE FBI AND DEPARTMENT OF THE IRS AS WELL AS THE
UNLOCKING OF THEIR BANK ACCOUNTS AND MATERIAL VENUES SINCE THE DEPARTMENTS INVOLVED DO NOT FIND
ANY CAUSE TO CONTINUE HAVING RESTRICTED YOUR COMINGS WHICH AFTER THE DATE
SEPTEMBER -01- 2022 WILL BE AT YOUR COMPLETE DISPOSAL UNDER COURT ORDER ORDER ISSUED BY THE STATE
COURT OF JUSTICE WITH CASE NUMBER – CPO-6575-0164 WE APOLOGIZE FOR THE ACTS
HAPPENED RECENTLY SINCE WHEN REVIEWING THE CASE OF THIS PROCESS IN DETAIL. WE WERE ABLE TO
REALIZE THAT HE HAS A COMPLETELY CLEAN RECORD OUT OF IRREGULARITIES WITHIN HIS
BUSINESS AND YOUR DAILY LIVING WITH YOURSELF COMPLETELY CLEAN AND FREE OF ALL ACCUSES
AND CHARGE GENERATED TO YOUR PERSON AND JOB POSITION

Thomas P. Griess

Thomas P. Griess
United States District Judge

This patently fabricated letter serves as example of the great lengths Perez-Rios would go to protect his scheme from any potential doubters. Perez-Rios imposed a signature of deceased United States District Court Judge Thomas P. Griesa[6] of the United States District Court for the Southern District of New York. The clearly photoshopped Judge Griesa's signature on the fake declaration of innocence and letter of apology was purportedly issued by the "Supreme Court of the State of Florida," "U.S. Department of Justice," and "Department of Justice of Florida" located at 190 W Government Street, Pensacola Florida, 32505, which is where the Escambia County Court is located.

### D. Similar Criminal Conduct

Perez-Rios's scheme shares notable similarities with other defendants prosecuted in other courts within his circuit. In *United States v. Cingari*, 952 F.3d 1301,1303 (11th Cir. 2020), a married couple Domenico and Rosa Cingari defrauded hundreds of undocumented foreign nationals into paying approximately $740,000 for falsified immigration forms for over four years. The couple operated an accounting and translation business geared toward foreign nationals[7] and mastered the art of obtaining a key DHS document known as a Form I-797C Notice of Action, but nicknamed the torch for its torch watermark through the filing of a Form 1-589 application for asylum

---

[6] https://www.nytimes.com/2017/12/26/obituaries/thomas-p-griesa-dead-judge-in-westway-dispute.html
[7] https://www.justice.gov/usao-mdfl/pr/lakeland-couple-convicted-large-scale-immigration-fraud

*Id.* Like Perez-Rios, the couple took advantage of the Florida law that allows foreign nationals to use "the torch" to obtain a valid Florida driver's license. *Id.* The couple misrepresented facts on the applications and listed their own business as the applicant's mailing address, which ensured that they could correspond with USCIS to the exclusion of the applicant. *Id.* The couple's clients would not have paid the couple to obtain the torch document had they known applications were fraudulent. *Id.* During the scheme, the couple filed more than 1,000 applications and usually charged between $500 and $800 per application. *Id.* Several clients were deported because the couple controlled all correspondence and failed to advise applicants of USCIS demanding interviews or other information about an application. *Id.* at 1304.

Following a trial, the couple was convicted of (1) falsifying immigration forms, in violation of 18 U.S.C. § § 2 and 1546(a); (2) mail fraud, in violation of 18 U.S.C. § § 2 and 1341; and (3) conspiracy to do the same in violation of 18 U.S.C. § 371. *Id.* Domenico Cingari (68 years old), was sentenced to 8 years and 1 month imprisonment. Rosa Cingari (68 years old), was sentenced to 12 years and 7 months.[8] In addition, the district court ordered that the couple be jointly and severally liable for a forfeiture money judgment in the amount of $740,880. *Cingari,* 952 F.3d at 1304.

Another fraud scheme closely resembling Perez-Rios's conduct is *United States v.*

---

[8] https://www.justice.gov/usao-mdfl/pr/lakeland-couple-sentenced-large-scale-immigration-fraud

*Reyes*, Case Number 20-cr-00111-VMC-AAS, 2022 WL 4476660 (11th Cir. Sept. 27, 2022), *cert. denied*, 143 S. Ct. 829, 215 L. Ed. 2d 76 (2023), arising out of the Middle District of Florida. In *Reyes*, defendant Elvis Harold Reyes (56 years old), pretended to be an immigration attorney and filed hundreds of fraudulent asylum applications.[9] Reyes owned and operated a nonprofit and charitable group called EHR Ministries Inc., and targeted undocumented immigrations from Spanish-speaking countries seeking representation in immigration-related matters before USCIS and other agencies. *Id.* Reyes gave false, inaccurate, and incomplete legal and immigration advice to his victims. *Id.* Once retained and paid, Reyes filed fraudulent immigration applications in the victims' names, seeking asylum relief. *Id.* Without informing victims, Reyes provided false information related to questions by fabricating stories about threats, persecution, and the applications' fear of returning to their native countries. *Id.* Reyes filed more than 225 fraudulent asylum applications, causing a loss amount exceeding $1 million. *Id.* Actual losses exceeded $411,000. *Id.* Reyes spent the criminal proceeds on travel, luxury shopping, spas, jewelry, beautification/anti-aging procedures, and an allowance for his girlfriend. *Id.* Reyes commonly charged $5,000 for his services. *See* Case No. 20-cr-00111-VMC-AAS [Doc. 50, PageID 94].

When confronted by victims regarding their immigration matters, Reyes

---

[9] https://www.justice.gov/usao-mdfl/pr/phony-immigration-attorney-who-filed-hundreds-fraudulent-asylum-applications-sentenced

threatened them, claiming that he could have them deported. [10]  Reyes was indicted in a 25-count indictment consisting of mail fraud, making false statements on immigration forms, and aggravated identity theft.  *Id.*  Reyes pleaded guilty to one count of mail fraud and one count of aggravated identity theft and to make full restitution to the victims of his offense.  *Id.*  The district court sentenced Reyes, who had a significant criminal history of fraud, to 24 years and 9 months in prison followed by three years of supervised release and ordered to pay restitution in the amount of $442,368.[11]

In, *United States v. Intriago*, Case Number 19-cr-00170-SCB-TGW, (M.D. Fla. 2019), defendant Erika Paola Intriago (45 years old) was sentenced to four years imprisonment after pleading guilty to one count of wire fraud in connection with a scheme involving her pretending to be an immigration attorney.[12]  Around 55 Spanish-speaking victims retained and paid Intriago to represent them in immigration-related matters before USCIS and other agencies.  *Id.*  The district court ordered that she forfeit $53,663, which represented the proceeds of her offense.  *Id.*  To help carry out her scheme, she sent fraudulent letters, emails, receipts, documents, and other communications to her victims, which included misrepresentations that the

---

[10] https://www.justice.gov/usao-mdfl/pr/phony-immigration-attorney-who-filed-hundreds-fraudulent-asylum-applications-sentenced
[11] https://www.justice.gov/usao-mdfl/pr/phony-immigration-attorney-who-filed-hundreds-fraudulent-asylum-applications-sentenced
[12] https://www.justice.gov/usao-mdfl/pr/tampa-woman-sentenced-four-years-federal-prison-immigration-fraud-scheme-stretching#:~:text=Bucklew%20today%20sentenced%20Erika%20Paola,the%20proceeds%20of%20her%20offense.

communications were legitimately sent by USCIS, DHS, and other federal agencies. *Id.* In reality, Intriago never filed the necessary immigration paperwork, abandoned the immigration process, or the applications had been denied without her informing victims. *Id.* When victims confronted her about her conduct, she threatened and intimidated them by saying that she would report their immigration status to immigration authorities, resulting in deportation. *Id.*

These sentences imposed in similar cases within the 11th Circuit, serve as additional guideposts for this Court and support a sentence to the high-end of the guidelines in this case. The recommended sentence in the instant case will be consistent and avoid unwanted sentence disparities among defendants with similar records who have been found guilty to similar conduct. *See* 18 U.S.C. § 3553(a)(6) ("the need to avoid unwanted sentence disparities among defendants with similar records who have been found guilty of similar conduct").

### E.      Forfeiture

On February 20, 2024, this Court entered an order granting the United States motion for forfeiture money judgment in the amount of $2,805,136.92, which represents the amount of proceeds derived from and obtained as a result of the counts of conviction in this case. [Doc. 37, PageID 185-186]. In the factual resume of Perez-Rios's plea agreement, Perez-Rios admitted that as part of his wire fraud scheme he obtained at least $2,805,136.92 in fraudulently obtained criminal proceeds. [Doc. 37,

PageID 187]. Despite diligent efforts, the United States could not locate specific property belonging to Perez-Rios constituting or deriving from the proceeds Perez-Rios received from the violations of 18 U.S.C. § 1343. The United States requests that this Court incorporate the money judgment in the amount of $2,805,136.92 as part of his sentence and judgment.

On February 26, 2024, the United States moved for preliminary order of forfeiture for $500 in U.S. currency that was seized from Perez-Rios on April 6, 2023 when he was arrested for the pending indictment in this case. If this Court grants the motion for preliminary order of forfeiture for the $500, the United States requests that it be incorporated in its sentence pronouncement and the made part of the final judgment.

### F.    Restitution

Perez-Rios owes substantial restitution to a large number of victims. Pursuant to Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, restitution is mandatory in this case. *See also* U.S.S.G. § 5E1.1 (stating that restitution shall be ordered). Perez-Rios must pay full restitution for all relevant conduct, which includes losses for uncharged conduct stemming from the same scheme. For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern

42

of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.  18 U.S.C.A. § 3663A(a)(2).

The United States is not aware of any assets belonging to Perez-Rios other than what is identified in the PSR.   However, "[t]he MVRA makes restitution mandatory, without regard to the defendant's ability to pay[.]"  *United States v. Young*, 851 F. App'x 938, 945 (11th Cir. 2021) (citing 18 U.S.C. § 3663A(a)(1), (c)(1)).  "A restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments."  U.S.S.G. § 5E1.1(f).

"[T]he purpose of restitution is not to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses."  *United States v. Martin*, 803 F.3d 581, 594 (11th Cir. 2015) (internal citations omitted).  "Restitution is not designed to punish the defendant."  *Id.* (citing *United States v. Bane*, 720 F.3d 818, 828 (11th Cir. 2013)).  Restitution is intended to restoring someone to a position occupied prior to a particular event.  *Id.*  And, the "amount of restitution owed to each victim must be based on the amount of loss actually caused by the defendant's conduct."  *Id.* (quoting *United States v. Huff*, 609 F.3d 1240, 1249 (11th Cir. 2010)).

"[T]he determination of the restitution amount is by nature an inexact science." *Id.* (quoting *Huff*, 609 F.3d at 1248). Thus, the United States is not required to calculate the victim's actual loss with laser-like precision but may instead provide a reasonable estimate of that amount. *Id.* (quoting *United States v. Futrell*, 209 F.3d 1286, 1290 (11th Cir. 2000); *see also United States v. Baldwin*, 774 F.3d 711, 728 (11th Cir. 2014)("where difficulties arise," a district court may accept a reasonable estimate of the loss based on the evidence). The United States must prove the restitution amount by a preponderance of the evidence. *Id.* (*see also* 18 U.S.C. 3664A(e)).

Where difficulties arise, a district court may accept a "reasonable estimate" of the loss based on the evidence presented. *United States v. Baldwin*, 774 F.3d 711, 728 (11th Cir. 2014) (citing *Futrell,* 209 F.3d at 1291–92). Indeed, a "reasonable approximation will suffice, especially in cases in which an exact dollar amount is inherently incalculable." *United States v. Sheffield*, 939 F.3d 1274, 1277 (11th Cir. 2019) (explaining that use of estimation is permitted because sometimes it is impossible to determine an exact restitution amount.). Finally, evidence used to estimate a restitution total need not be sworn, rather, it must bear a sufficient indicia of reliability to support its probable accuracy. *United States v. Gatlin*, 90 F.4th 1050, 1075 (11th Cir. 2024).

Throughout the investigation and prosecution of this case, the United States has endeavored to identify and contact as many individuals as possible who have been identified in this scheme prior to sentencing. Because many victims were identified

through fraudulent asylum applications, which bore residential addresses belonging to Perez-Rios, the United States worked to identify current contact information for victims of this scheme so that they may provide accurate loss amounts.

The United States believes that the final restitution calculation will be uncontested. Although the loss amount for purposes of the guidelines is different, Perez-Rios admitted in his factual resume that he profited at least approximately $2.8 million from this scheme. As of today, the United States has reasonably estimated that the total amount of restitution owed to approximately 129 victims in this case is approximately $2,251,078.10, which is commensurate with the amount described in the factual resume. The United States will provide the probation office and counsel for the defense a list of all victims who are owed restitution along with their individual loss amounts calculated as of today. The United States has obtained these individual restitution loss amounts through witness interviews with law enforcement, sworn declarations of loss, and loss amounts provided by the victims' retained counsel, along with all supporting documentation. To the extent that the United States receives additional restitution amounts from additional victims prior to sentencing, the United States will promptly share that with the probation office and counsel for the defense.

## III.    Conclusion

For the foregoing reasons, the United States recommends a sentence per each count of conviction at the high-end of the advisory sentencing guideline range as

determined by the Court with each sentence to run concurrently, a three-year term of supervised release, a $100 special assessment per count of conviction, forfeiture money judgment in the amount of $2,805,136.92, forfeiture of $500 U.S. currency, and restitution in the amount of at least $2,251,078.10. Such a sentence would be appropriate and reasonable considering the applicable guideline sentencing range and the factors set forth in 18 U.S.C. § 3553.

Respectfully submitted on March 1, 2024.

SEAN P. COSTELLO
UNITED STATES ATTORNEY

By: */s/ JUSTIN D. KOPF*
Justin D. Kopf
Assistant United States Attorney
United States Attorney's Office
63 South Royal Street, Suite 600
Mobile, Alabama 36602
Telephone: (251) 441-5845

By: */s/ CHRISTOPHER J. BODNAR*
Christopher J. Bodnar
Assistant United States Attorney
United States Attorney's Office
63 South Royal Street, Suite 600
Mobile, Alabama 36602
Telephone: (251) 441-5845